NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CURTIS LEE et al., <br><br> Plaintiffs, <br><br> v. <br><br> THE COUNTY OF PASSAIC and ANTHONY DENOVA, <br><br> Defendants. | Civil Action No. 2:09-cv-5735 (SDW) <br><br><br> OPINION <br><br><br><br> July 26, 2011 |

**WIGENTON**, District Judge.

Before the Court is Defendants', the County of Passaic (the "County") and County Administrator Anthony J. DeNova ("DeNova"), Motion for Summary Judgment (the "Motion") pursuant to Federal Rule of Civil Procedure 56. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1367. Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendant's Motion.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs, forty-nine former employees of the Passaic County Juvenile Detention Center (the "Center"), were overpaid an average of $35,000 each due to payroll miscalculations in the salary schedule of their 2003-2006 collective bargaining agreement (the "CBA"). (*See* Ex. 49 at 1-3; *see also* Independent Accounting Report at SOMF, Appendix I.) In total, Plaintiffs were overpaid approximately $1.7 million by the County. (Ex. 49 at 1-3; Independent Accounting Report at SOMF, Appendix I.)

1

When the CBA expired on December 31, 2006, the County and Plaintiffs negotiated with Plaintiffs' Union (the "Union") to negotiate a new agreement. (*See* Ex. 5 at 28:13-18, 42:16-17.) After nearly two years of negotiations, two potential plans were devised that would account for the overpayment situation.[1] (*See* Ex. 5 at 57:10-59:2.) "Plan A" would give Plaintiffs the same wage increases and compensation that other County employees received, but the County would implement payroll deductions to recover overpayments made to Plaintiffs under the CBA. (Ex. 5 at 58:12-23.) Under "Plan B," Plaintiffs would not receive any wage increases over an eighteen-month period, but the County would not make payroll deductions to reduce the overpayment made under the CBA. (Ex. 5 at 58:17-59:1.)

Mario Rivera, the Union representative, scheduled a meeting for October 28, 2008 for the Union members to consider the two proposed plans. (Ex. 5 at 57:10-58:4.) Due to time constraints—and because of the importance of the overpayment issue as it related to future salaries—only the economic terms of the plans were considered and noneconomic terms were scheduled for discussion at a subsequent meeting. (Ex. 5 at 53:1-7, 58:2-11, 61:17-24.) A majority of the Union membership voted to adopt Plan B, but because the noneconomic terms had not been discussed, neither plan was officially ratified at the meeting. (Ex. 5 at 59:5-61:24, 72:7-73:8, 78:5-13.)

On October 29, 2008, the day after the vote was taken, a few employees—only one of whom is a Plaintiff, Sergeant William Crawley ("Crawley")—made statements to the media opposing Plan B. (Ex. 10 at 14:7-15:7, 15:24-16:8; *see also* Ex. 37.) These statements informed DeNova of lingering discontent with Plan B. (*See* Ex. 7 at 71:15-72:8.) The situation was exacerbated when twenty-seven employees petitioned DeNova

---

[1] There was also a third plan, which was "none of the above." (Ex. 5 at 59:1-4, 72:25-73:2.)

to oppose Plan B.  (Ex. 39.)  In addition, DeNova received phone calls from numerous taxpayers encouraging him to recover the overpayments.  (Ex. 6 at 52:12-16.)  In light of these events, DeNova called Rivera to inform him that ratification for Plan B would no longer be possible and that it was "off the table."  (Ex. 5 at 80:7-81:13.)

Plaintiffs commenced the instant action by filing a Complaint against Defendants on November 11, 2009.  On February 2, 2010, Plaintiffs filed a Third Amended Complaint, alleging violations of Plaintiffs' First Amendment rights to freedom of speech and association under the United States Constitution, enforceable under 42 U.S.C. § 1983 ("Section 1983"), and violations of Plaintiffs' First Amendment rights to freedom of speech and association under the New Jersey Civil Rights Act, N.J. Stat. Ann. 10:6-1 *et seq.* (the "Act") and the New Jersey Constitution.  (Ex. 1 at ¶¶ 32-38, 43-46.)  On February 25, 2011, Defendants filed a Motion for Summary Judgment.

**LEGAL STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine if a reasonable jury could return a verdict for the nonmovant, and it is material if, under the substantive law, it would affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party meets the initial burden, the burden then shifts to the nonmovant who must set forth specific facts showing a genuine issue for trial and may

not rest upon the mere allegations or denials of its pleadings. *Shields v. Zuccarini*, 254 F.3d 476, 481 (3d Cir. 2001). The court may not weigh the evidence and determine the truth of the matter but rather determine whether there is a genuine issue as to a material fact. *Anderson*, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in a light most favorable to the nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991). The nonmoving party "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp.*, 477 U.s. at 325). If the nonmoving party "fail[s] to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. at 323.

**DISCUSSION**

**Freedom of Speech**

42 U.S.C. § 1983 ("Section 1983"), provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

The plaintiff in a Section 1983 action "must allege that some person has deprived him of a federal right . . . [and] that the person who has deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Plaintiffs here allege that they were deprived of their First Amendment right to freedom of speech in violation of Section 1983.

In determining if an employee suffered retaliation in violation of that employee's right to freedom of speech, the Court "must 'balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [public employer], in promoting the efficiency of the public services it performs through its employee.'" *Miller v. Clinton County*, 544 F.3d 542, 548 (3d Cir. 2008) (quoting *Pickering v. Board of Ed. of Tp. High School Dist. 205, Will County, Illinois*, 391 U.S. 563, 568 (1968)). The balancing test consists of a three prong inquiry. *Id.* The plaintiff must establish that (1) the speech was protected; and (2) "that it was a motivating factor in the alleged retaliatory [act]." *Id.* Finally, if the plaintiff proves these points, the employer must then demonstrate that the same employment action would have taken place "even in the absence of the protected conduct." *Id.*

A statement made by a public employee is considered protected speech when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006). Thus, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employees behavior." *Connick v. Myers*, 461 U.S. 138, 147 (1983); *see also Miller v. Clinton County*, 544 F.3d 542 (holding that an employee's speech was not protected although it "brushed upon" a matter of public concern because the reason for her

5

grievance was essentially her supervisor's treatment of her); *see e.g., Beresford v. Wall Twp. Bd. of Educ.*, 2010 U.S. Dist. LEXIS 9180 *16 (D.N.J. Feb. 3, 2010) (stating that "[a]lthough union-related speech is generally a matter of public concern," speech relating "only to the employee's generalized personal grievances and gain" does not rise to that level especially when "the speech was not engaged in with the purpose of informing the public that the government discharged its responsibilities or of bringing to light the government's breach of public trust); *James v. Valley Twp.*, 1998 U.S. Dist. LEXIS 41 *8 (E.D. Pa. Jan. 6, 1998) (holding that an employee's complaint of another employee's hourly rate was due to her "own personal discontent[] . . ., rather than concern for the public good").

The only plaintiff to make comment to the media was Sergeant Crawley. Therefore this claim must be dismissed as to the other plaintiffs as they do not allege that they made any statement purported to be protected speech. Further, Sergeant Crawley's claim also fails as his comments do not rise to the level of protected activity. According to Plaintiff's Complaint, Sergeant Crawley's comments were regarding cost of living increases; salary readjustments; and whether the County overpaid certain officers. The statements, much like the cases cited above, fall into the category of personal grievance. He was not speaking to the County's mismanagement of funds, its discharge of its responsibilities, or any breaches of the public's trust. Sergeant Crawley's comments were only related to the salary and compensation demands of himself and his fellow employees. Although these comments were made in connection to negotiations with the Union, concerns over personal salaries and benefits cannot be said to "relat[e] to any matter of political, social, or other concern to the community." *See Connick v. Myers*,

461 U.S. at 146.  It is not necessary for this Court to discuss whether Defendants engaged in retaliatory conduct since Plaintiffs' speech was not protected under the First Amendment.

**Freedom of Association**

The Third Circuit has stressed that the "right of association is a 'basic constitutional freedom,' that is 'closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society.'"  *Mariani v. United States*, 212 F.3d 761, 771 (3d Cir. 2000) (quoting *Buckley v. Valeo*, 424 U.S. 1, 25 (1976) (internal citations omitted).  Government action having "the effect of curtailing the freedom to associate is subject to the closest scrutiny."  *Id.* (quoting *Buckley v. Valeo*, 424 U.S. at 25).  Further, employees do not forego their right to exercise freedom of association when their employer is the government.  *Rode v. Dellarciprete*, 845 F.2d 1195, 1204 (3d Cir. 1988).  However, employees claiming that retaliatory action "was taken against them based upon the exercise of their associational rights must show that they were engaged in constitutionally protected conduct, which conduct was a 'substantial' or 'motivating' factor' in the government employer's decision."  *Id.*; *see also Bradshaw v. Twp. of Middletown*, 296 F. Supp. 2d 526, 544 (D.N.J. 2003) (stating that "[t]o state a claim under § 1983, plaintiffs must allege instances of union activity for which they were retaliated against by persons acting under color of state law").

Plaintiffs' claim that Defendants retaliated against all union members by not ratifying the agreement as punishment for speech emanating from dissenting members. However, as stated above, this Court cannot hold that Sergeant Crawley's speech was protected activity under the First Amendment.  Plaintiffs have not presented this Court

7

with a valid union activity that amounted to constitutionally protected conduct as required for a claim for retaliatory action due to freedom of association. Thus, these claims also fail.

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED.** Further, this Court declines to exercise jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367.

s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
Cc:     Madeline Cox Arleo, U.S.M.J.
        Parties